1  KATHRYN C. WANNER (Cal. Bar No. 269310)
   Email:  wannerk@sec.gov
2  M. LANCE JASPER (Cal. Bar No. 244516)
   Email: jasperml@sec.gov
3
   Attorneys for Plaintiff
4  Securities and Exchange Commission
   Michele Wein Layne, Regional Director
5  Alka N. Patel, Associate Regional Director
   Jennifer Barry, Regional Trial Counsel
6  444 S. Flower Street, Suite 900
   Los Angeles, California 90071
7  Telephone: (323) 965-3998
   Facsimile: (213) 443-1904
8
9                  **UNITED STATES DISTRICT COURT**
10                 **CENTRAL DISTRICT OF CALIFORNIA**
11

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>       vs.<br><br>DAVID J. BUNEVACZ, MARY HAYCA BUNEVACZ, CAESARBRUTUS LLC, CB HOLDING GROUP CORP., AND BRUTUS CALIFORNIA VENTURES CORP.,<br><br>              Defendants, | Case No.<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a); and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa.

2.     Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.  In addition, venue is proper in this district because all of the individual Defendants reside in this district, and all of the corporate Defendants have their principal places of business in this district.

## SUMMARY

4.     This is an enforcement action brought against defendant David J. Bunevacz ("Bunevacz"), a securities fraud recidivist, and two entities under his control: defendants Caesarbrutus LLC ("Caesarbrutus") and CB Holding Group Corp. ("CB Holding").  Bunevacz, Caesarbrutus, and CB Holding violated the federal securities laws by conducting an offering fraud and Ponzi scheme, and by engaging in the unregistered offer and sale of securities.  Bunevacz's step-daughter, defendant Mary Hayca Bunevacz ("Mary Hayca"), also violated the federal securities laws by participating in the unregistered offer and sale of securities issued by Caesarbrutus, CB Holding and Brutus California Ventures Corp.  Defendant Brutus California Ventures

1

Corp. ("Brutus California") was a co-issuer of promissory notes issued by CB Holding and violated the federal securities laws by participating in the unregistered offer and sale of those notes.

5.      From at least April 2017 until at least September 2019, Bunevacz, Caesarbrutus and CB Holding raised over $32 million from at least 40 investors. Bunevacz told investors he was engaged in the production and sale of cannabis products, particularly "vape" pens containing oils infused with Cannabidiol (CBD), and promised to use their funds to generate profits from these activities.  In some instances, he claimed to have binding purchase orders for large quantities of vape pens and provided investors with fake purchase orders and other fabricated documents to support these claims.

6.      In reality, Caesarbrutus and CB Holding were sham businesses, and the purported transactions did not exist.  Instead of using investor funds for business purposes, Bunevacz misappropriated the vast majority of those funds for personal expenses, including millions of dollars spent gambling and on credit card payments, leaving investors with substantial losses.

7.      Bunevacz also lied to investors about his professional experience and connections in the cannabis industry and, in most instances, failed to disclose his March 2017 conviction of two felony securities violations under California law.  In at least one instance, he falsely told an investor he had no criminal history.

8.      Brutus California was a co-issuer of securities issued by CB Holding, and Mary Hayca participated in the offer and sale of securities issued by Caesarbrutus, CB Holding and Brutus California, none of which registered any offering of securities with the SEC.

9.      As a result of the conduct alleged in this Complaint, defendants Bunevacz, Caesarbrutus and CB Holding violated Sections 17(a), 5(a), and 5(c) of the Securities Act of 1933, 15 U.S.C. § 77q(a), ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 17j(b), ("Exchange Act"), and

Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5, and defendants Mary Hayca and Brutus California violated Sections 5(a) and (c) of the Securities Act.

## DEFENDANTS

10.   **David J. Bunevacz** ("Bunevacz"), age 53, is a resident of Calabasas, California.  Bunevacz was the president of CB Holding and the manager of Caesarbrutus.  He controlled those entities and their bank accounts and was the person in charge of those entities and responsible for their day-to-day operations at all relevant times.  In August 2016, the State of California charged Bunevacz with grand theft, selling securities without qualification, and using false statements in the sale of a security.  On March 22, 2017, Bunevacz pleaded guilty to two felony counts of selling securities without qualification.  The court entered a suspended sentence contingent on Bunevacz paying a total of $273,000 in restitution to two victims, which Bunevacz paid, at least in part, using investor funds.

11.   **Caesarbrutus LLC** ("Caesarbrutus") is a Wyoming limited liability company formed on January 11, 2017 with its principal place of business in Valencia, California.  Caesarbrutus and its securities offerings are not registered with the SEC.

12.   **CB Holding Group Corp.** ("CB Holding") is a Nevada corporation registered on June 29, 2018 with its principal place of business in Calabasas, California.  CB Holding and its securities offerings are not registered with the SEC.

13.   **Mary H. Bunevacz** ("Mary Hayca"), age 33, is Bunevacz's step-daughter and a resident of Calabasas, California, where she lives with her parents.  Mary Hayca has a bachelor's degree in Global Studies.  She is currently unemployed and has previously worked in the vaporizer pen and e-cigarette industries.  Mary Hayca held executive-level titles with Caesarbrutus and CB Holding, although Bunevacz was the person in charge of those entities.  She administered bank accounts and participated in meetings and communications for Caesarbrutus and CB Holding at Bunevacz's direction.

14.   **Brutus California Ventures Corp**. ("Brutus California") is a California

Corporation registered by Mary Hayca on July 13, 2018 with its principal place of business in Valencia, California. Mary Hayca opened and controlled Brutus California's bank account. Brutus California and the offerings for which it was a co-issuer with CB Holding were not registered with the SEC.

## FACTS

### A. The Promissory Notes, Stock Certificates, and Profit Sharing Agreements Were Securities

#### 1. Promissory Notes

15. Bunevacz primarily raised investor funds through promissory notes issued by Caesarbrutus and CB Holding (collectively, the "Promissory Notes").

16. Brutus California was listed as a co-issuer of the notes issued by CB Holding.

17. Bunevacz represented to investors that the proceeds of the Promissory Notes would be used for business purposes, and often represented that investor funds would be used to complete profitable sales of vape pens.

18. The Promissory Notes were similar, except that notes issued by CB Holding came with warrants that permitted lenders to convert them to shares of CB Holding common stock at the lender's option.

19. The Promissory Notes typically matured in six or twelve months and provided for repayment of principal with interest at maturity. Principal amounts for the Promissory Notes ranged from $10,000 to $3.5 million, with many notes falling in the $50,000 to $300,000 range, and with interest ranging from 10% to 15% per year.

20. Caesarbrutus raised at least $19 million from the sale of Promissory Notes between April 2017 and June 2019, and CB Holding raised at least $8 million from the sale of Promissory Notes between July 2018 and September 2019.

21. The Promissory Notes constitute investment contracts subject to the federal securities laws.

22. Purchasers of the Promissory Notes invested money in exchange for the

notes.

23.     As Bunevacz described the Promissory Notes to investors, both the investors' profits and the issuer's profits would come from the issuer's successful use of investor funds in the operation of its cannabis business, and often through the profitable sale of vape pens.

24.     In at least some instances, investors expected their funds to be pooled with other investor funds.

25.     Bunevacz pooled investor funds and used some of those funds to make payments to investors for previously issued securities, also known as Ponzi payments.

26.     Investors in the Promissory Notes expected the profits from their investments to be derived solely from the issuer's efforts to make money through its cannabis-related business.  In many instances, investors in the Promissory Notes expected their profits to derive from Bunevacz's efforts to buy and sell vape pens.

27.     The Promissory Notes also constitute notes subject to the federal securities laws.

28.     Investors purchased the Promissory Notes for investment purposes and not for commercial or consumer purposes.

29.     The Promissory Notes were sold to a broad segment of the public, including to at least 30 investors located in multiple states.

## 2.     Stock Certificates

30.     Bunevacz also raised investor funds through the sale of stock certificates issued by CB Holding (the "Stock Certificates").

31.     Bunevacz represented to investors that CB Holding was engaged in the business of selling cannabis-related products and planned to use investor funds to grow that business.

32.     Bunevacz raised at least $1.2 million through the sale of at least 13 million shares of CB Holding stock.

33.     In at least some instances, Bunevacz sold the stock to investors at less

than $0.10 per share.

34.     Investors acquired the Stock Certificates for investment purposes.

35.     Both investors and CB Holding described the Stock Certificates as shares of common stock in CB Holding.

### 3.     Profit Sharing Agreements

36.     In some instances, Bunevacz raised funds through profit sharing agreements issued by Caesarbrutus (the "Profit Sharing Agreements") which entitled investors to various percentages of Caesarbrutus's profits from certain of Bunevacz's business activities.  For example, one of those agreements entitled the investor to 80% of the profits generated from Bunevacz's sales of vaporizer pens in exchange for a $4 million investment.

37.     Caesarbrutus raised at least $4.4 million through Profit Sharing Agreements.

38.     The Profit Sharing Agreements constitute profit-sharing agreements subject to the federal securities laws.

### B.     Identification and Solicitation of Investors

39.     Bunevacz typically solicited investors through in-person meetings, telephone calls, text messages, and emails.

40.     Bunevacz raised investor funds from people he knew personally, such as his dentist, and people he met through his teenage daughter's participation in equestrian events.

41.     In some instances, investors who knew Bunevacz introduced him to potential investors with whom he had no pre-existing relationship, some of whom later invested with Caesarbrutus or CB Holding.

42.     Caesarbrutus and CB Holding raised funds from investors in multiple states and from investors outside the United States.

43.     Mary Hayca joined Bunevacz in some meetings with prospective investors.  During those meetings, Bunevacz and Mary Hayca discussed Mary

6

Hayca's background in the vaporizer pen industry.

**C.   Mary Hayca's Role with CB Holding and Caesarbrutus**

44.   Mary Hayca signed Stock Certificates for CB Holding and Promissory Notes issued by Caesarbrutus and CB Holding.

45.   Mary Hayca granted her father, Bunevacz, general authority to sign business documents for CB Holding and Caesarbrutus in her name, which Bunevacz used to sign at least some of the securities issued by those entities.

46.   Mary Hayca had signatory authority on CB Holding bank accounts that received investor funds and transferred those funds at Bunevacz's direction to entities that Bunevacz claimed were legitimate third-party suppliers.

47.   Mary Hayca received at least $39,000 from CB Holding that originated with investors.  She received other benefits from investor funds, including car payments made for her benefit.

**D.   The Fraud**

**1.   Bunevacz's Misrepresentations and Omissions to Investors about the Business**

48.   Bunevacz raised money from investors by lying to them about Caesarbrutus's and CB Holding's business activities, and promising to use their funds for those entities' profitable business ventures – in particular, the sale of vape pens.

49.   Bunevacz told investors he had valuable relationships with reputable companies that Caesarbrutus and CB Holding could leverage to buy and sell products for profit, including a China-based manufacturer called Blue Ox Industrial Co. Ltd. ("Blue Ox"), an oil producer called Greenfield Organix ("Greenfield Organix"), a Cannabis products supplier called Claremont Capital Partners ("Claremont Capital"), and a Cannabis products distributor called Saveur Vape LLC ("Saveur Vape").

50.   In reality, Bunevacz did not have the claimed business relationships, and instead created bank accounts under like-sounding names to those actual companies in order to mislead investors into believing the legitimacy of the investments.

7

51.     Similarly, Bunevacz told some investors he had binding purchase orders for large numbers of vape pens – including from Saveur Vape – and agreements from suppliers – including Blue Ox, Greenfield Organix, and Claremont Capital – to provide the pens and oils needed to fulfill those orders on profitable terms.

52.     For example, in late 2018 and early 2019, Bunevacz represented to a Canada-based investor in telephone conversations and in person that Bunevacz was seeking to raise funds to complete vape pen transactions with business partners on profitable terms.  He provided that investor with purported purchase orders from Saveur Vape and purported invoices from Blue Ox, Greenfield Organix and Claremont Capital concerning the claimed business transactions.  The investor subsequently made substantial investments with CB Holding.

53.     These representations were false and misleading, and the purchase orders and invoices were fabricated.  Bunevacz and his companies did not have the claimed relationships with suppliers and customers in the cannabis industry, and the purported vape pen transactions did not exist.

54.     Bunevacz relied on other misrepresentations, omissions, and misleading documents to induce investments in Caesarbrutus and CB Holding.

55.     In approximately October 2018, for example, Bunevacz met with two prospective investors for an extended meeting, in person, in Lexington, Kentucky. During that meeting, Bunevacz represented to the investors that Caesarbrutus had over $17 million in revenue from product sales in 2017.  At the same meeting, he showed the investors what he represented were audited financial statements for Caesarbrutus that reflected over $17 million in revenue from product sales.  These representations – and the purported audited financials – were false and misleading because Caesarbrutus did not have any significant revenue or product sales in 2017.

56.     In the same meeting, Bunevacz represented to the investors that he was a founder of Grenco Science, a vaporizer pen company associated with celebrity rapper Snoop Dogg that sells a well-known product called the G Pen.  This representation

was false and misleading because Bunevacz was not a founder of Grenco Science. Instead, he controlled an unrelated entity called Grenco Science Inc. that he used to misappropriate investor funds. Those investors and a related entity subsequently invested over $4 million with CB Holding.

57. Bunevacz falsely and misleadingly represented to other investors that he was a founder of Grenco Science, including an Anaheim, California-based individual who invested a total of approximately $2 million with Caesarbrutus in December 2017 and January 2018 for the purpose of funding vape pen transactions to be completed by Bunevacz and Caesarbrutus.

58. In approximately August 2019, Bunevacz provided another prospective investor, whom Bunevacz knew from his teenage daughter's participation in equestrian activities, with CB Holding investor materials that described Bunevacz as a founder of Grenco Science. Bunevacz provided the materials to the prospective investor via email. That investor subsequently invested $10,000 with CB Holding.

59. Bunevacz also told investors he was a significant investor in a cannabis wellness company called Papa & Barkley. This representation was false because Bunevacz never invested in Papa & Barkley. In approximately January 2019, for instance, Bunevacz gave a prospective investor Papa & Barkley products to aid the investor's ailing father and falsely represented that his business connections in the cannabis industry included being a significant shareholder in Papa & Barkley. That individual subsequently invested $400,000 with CB Holding, and a friend and business associate of that investor, whom Bunevacz also personally solicited, invested a total of $1.1 million with CB Holding.

60. Bunevacz also misled some current and prospective investors by providing them with bank statements that appeared to reflect CB Holding's use of investor funds for legitimate business activities, including payments to suppliers and from customers.

61. In early 2019, for example, Bunevacz provided a prospective investor

with bank statements that purported to reflect CB Holding's use of investor funds for payments to suppliers, including a payment to "Blue Ox Industrial" of $820,000 on December 20, 2018, and its subsequent receipt of payments from customers. Bunevacz represented to the investor that the transactions reflected in the bank statements concerned arm's-length business dealings with third party customers and suppliers. The investor had previously recommended a substantial investment by an affiliated entity, which the entity made, and subsequently made a substantial personal investment with CB Holding, including because of the information contained in the bank statements.

62.    The bank statements were false and misleading because they did not reflect transactions with third-party suppliers and customers. Instead, they reflected transfers of funds to and from accounts controlled by Bunevacz through entities that had similar names to those third-party companies, but that were instead used by Bunevacz to misappropriate investor funds and create the false appearance of legitimate business activity. Payments in the bank statements to "Blue Ox Industrial" for example, did not go to the China-based Blue Ox Industrial Co. Ltd. that Bunevacz claimed to do business with; they went to an account held by an unrelated Wyoming entity named Blue Ox Industrial Inc. that Bunevacz controlled and used to misappropriate investor funds.

63.    Bunevacz's representations and the documents he provided investors were important to investors who subsequently purchased the Promissory Notes and Stock Certificates, and who entered into the Profit Sharing Agreements. Investors believed Bunevacz, Caesarbrutus, and CB Holding had the business connections they claimed to have and could complete the promised business transactions with the investors' funds. Bunevacz's claims to be a founder of Grenco Science and an investor in Papa & Barkley, for example, were important to investors because they led investors to believe that Bunevacz was a successful and connected business person in the cannabis industry.

1

2

### 2.    Bunevacz's Misrepresentations and Omissions to Investors about the Use of Funds

3

4

64.    Bunevacz promised to use investor funds to complete profitable vape pen transactions and for other business purposes.  For example:

5

6

7

8

9

10

11

(a)    In November 2017, Bunevacz represented to a group of investors led by an individual in Florida that he would use their funds to acquire vape pens to sell to a retailer called Boston Smoke Shop at a significant profit.  He represented that Boston Smoke Shop had agreed to purchase millions of dollars in pens from Caesarbrutus.  The investment group subsequently invested $4 million with Caesarbrutus through a Profit Sharing Agreement that entitled them to a portion of the profits generated from those sales.

12

13

14

15

16

17

(b)    In late 2017 and early 2018, Bunevacz represented to an individual investor located in Anaheim, California that he would use the investor's funds to purchase vape pens from China and sell them at a significant profit to a retailer in New York.  Bunevacz's representations about his planned use of the investor's fund induced a total of approximately $2 million in investments by the individual with Caesarbrutus in late 2017 and early 2018.

18

19

20

21

22

23

24

25

26

27

(c)    In approximately September and October 2018, Bunevacz told the representative of a prospective entity investor based in Canada that he would use the investor's funds to acquire supplies needed to complete pre-existing purchase orders for vape pens, including an order for 525,000 pens infused with CBD oil.  On or about November 20, 2018, CB Holding entered into a loan agreement with the same prospective investor, which provided that CB Holding would use funds borrowed from the investor to process orders for vaporizer pens, including for payments to suppliers.  The prospective investor subsequently loaned CB Holding at least $3 million pursuant to that loan agreement and a promissory note issued by CB Holding and Brutus California.

28

(d)    In approximately June 2019, Bunevacz represented to a

prospective investor that CB Holding needed funds to fulfill an order for 1.2 million vape pens that would generate significant profits for CB Holding and the investor. He discussed the proposed investment with the prospective investor via telephone. The investor and his wife subsequently invested $500,000 with CB Holding.

65.   Bunevacz's promises to use investor funds for business purposes, including to complete vape pen transactions, were important to these and other investors.

66.   Bunevacz, Caesarbrutus and CB Holding did not use the funds provided by these and other investors as promised, and never intended to use those funds as promised.  Instead, Bunevacz pooled investor funds and misappropriated the vast majority of those funds for personal expenses, including:

> (a)   Over $8 million transferred to casinos;

> (b)   Over $10 million in credit card expenses;

> (c)   Over $300,000 spent on a horse in November 2018;

> (d)   Over $200,000 spent on a birthday party with circus-style entertainment in June 2019;

> (e)   Over $200,000 spent on rent for a five-bedroom mansion in Calabasas, California; and

> (f)   Hundreds of thousands of dollars spent on jewelry.

67.   Bunevacz also used investor funds to pay criminal restitution that he was ordered by a California court to pay in connection with his March 2017 conviction for felony securities violations.

68.   Bunevacz also used investor funds to pay purported returns on previously issued securities, inducing some investors to purchase additional securities.

69.   Investors would not have provided funds to Caesarbrutus or CB Holding for Bunevacz's personal use or payments to earlier investors.

///

### 3. Bunevacz's Misrepresentations and Omissions about His Criminal History and Lawsuits Filed Against Him

70. When soliciting investors for Caesarbrutus and CB Holding, Bunevacz consistently held himself out as a successful businessperson and investor, and consistently failed to disclose his March 2017 conviction for two felony securities violations under California law. When soliciting an Anaheim, California-based investor who invested a total of approximately $2 million with Caesarbrutus in late 2017 and early 2018, for example, Bunevacz held himself out as successful and experienced, but did not disclose either his felony securities conviction or the fact that California had charged him with felony securities violations.

71. In late 2018, a Canada-based investor specifically asked Bunevacz if he had any criminal history, and Bunevacz falsely replied that he did not.

72. Investors would not have invested with Caesarbrutus or CB Holding had they known either that California had charged Bunevacz with securities violations or that Bunevacz had been convicted of felony securities violations. This includes the Canada-based investor and the Anaheim-based investor, each of whom learned about Bunevacz's criminal history only after investing with his companies.

73. When soliciting investors for Caesarbrutus and CB Holding, and describing himself as a successful businesspersons and investor, Bunevacz also failed to disclose a number of lawsuits filed against him by past investors and business partners alleging that Bunevacz had taken their money and failed to deliver on promises made in business deals similar to the transactions he proposed with CB Holding and Caesarbrutus. This included a 2010 lawsuit accusing Bunevacz of fraudulently promising to provide nearly $3 million in event tickets for the Vancouver Olympics; a 2017 lawsuit accusing Bunevacz of failing to repay funds owed based on promises to buy vape pens and electronic vaporizers from a manufacturer in China; and a December 2018 lawsuit accusing Bunevacz of failing to return funds provided for the purchase of vape pens.

74.     Investors would not have invested with either Caesarbrutus or CB Holding had they known that Bunevacz's previous investors and business counterparts had accused him of taking their money in similar deals.

75.     In late 2018, a Canada-based investor learned about the lawsuit against Bunevacz concerning the Vancouver Olympics and asked Bunevacz to explain what happened.  Bunevacz falsely explained to the investor that the lawsuit was resolved in his favor and provided the investor with a settlement agreement that purported to require Bunevacz's former counterparty to pay Bunevacz $325,000.  In reality, the opposite was true – Bunevacz had agreed to pay his former counterparty $325,000 to resolve the lawsuit – and the settlement agreement Bunevacz provided to the investor was fabricated.  Bunevacz's explanation and the purported settlement agreement contributed to the investor's decision to invest with CB Holding.

### 4.     Ponzi Payments and Lulling Conduct

76.     Bunevacz also used at least some investor funds to pay purported returns on previously issued securities.  For example, in February 2019, Bunevacz used investor funds to make two payments totaling $150,000 to an earlier investor.

77.     When Bunevacz failed to make payments to investors as promised, he generally provided excuses such as that the proposed business transaction or transactions had been delayed, but would soon be completed.

78.     In at least one instance, he persuaded an investor to contribute additional funds to complete the alleged business transactions.

79.     Bunevacz repeatedly promised some investors that he would return their funds, but never made the payments.

80.     Bunevacz's lulling statements were false and misleading because defendants never had any contractual or other business relationship with the alleged third-party business contacts which would have justified repayment of investor funds, and because Bunevacz and his companies' true business activity was misappropriating investor funds through false and misleading claims about their

business activities, connections, experience, and intended use of funds.

**E.  Defendants Acted with a High Level of Scienter, or in the Alternative, Were Negligent**

81.    Bunevacz acted with a high degree of scienter.

82.    As the principal of Caesarbrutus and CB Holding, the person controlling their bank accounts, and the person who claimed to have the operative relationships in the cannabis industry, Bunevacz knew, or acted recklessly in not knowing that: (1) he and his companies did not have the claimed business relationships; (2) the vaporizer pen transactions were not real; (3) the invoices and purchase orders were fabricated; (4) the bank statements were misleading; (5) he did not have the business experience he claimed to have; and (6) he was routinely misappropriating investor funds instead of using them to buy and sell vape pens and other cannabis products for profit.

83.    Bunevacz also knew about his felony securities convictions and the lawsuits against him when he described his purported business experience, and knew that his affirmative representations, when asked about certain of those matters – and the fabricated settlement agreement he provided to at least one investor – were false and misleading.

84.    As Caesarbrutus' and CB Holding's principal, Bunevacz's scienter is imputed to those entities.

**FIRST CLAIM FOR RELIEF**

**Fraud in Connection with the Purchase and Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

**(against Bunevacz, Caesarbrutus, and CB Holding)**

85.    The SEC realleges and incorporates by reference paragraphs 1 through 84 above.

86.    As set forth above, defendants Bunevacz, Caesarbrutus, and CB Holding made material misrepresentations to investors, and omitted material information

when communicating with investors, including statements that: Caesarbrutus and CB Holding had relationships with reputable customers and suppliers that they could leverage into profitable transactions; Caesarbrutus and CB Holding had binding orders for large numbers of vaporizer pens and agreements from suppliers to provide the inventory to fulfill those orders at profitable margins; Caesarbrutus and CB Holding planned to use investor funds for business operations, including to complete profitable sales of vape pens; and Bunevacz was a founder of Grenco Science, held a significant ownership stake in Papa & Barkley, and had grown Caesarbrutus to $17 million in revenue in 2017. Bunevacz also made material misrepresentations and omitted material information when soliciting investors by claiming to be a successful businessperson and investor without disclosing his felony securities convictions and the lawsuits filed against him.

87.     In addition, defendants Bunevacz, Caesarbrutus, and CB Holding engaged in a scheme to defraud whereby they induced investors to invest in the securities issued by Caesarbrutus, CB Holding, and Brutus California, including by: providing current and prospective investors with fabricated purchase orders and invoices, false and misleading bank statements and, in at least one case, a fabricated settlement agreement; creating entities with the same and similar names as the customers and suppliers Bunevacz claimed to do business with and transferring money to and from those entities to create the false impression with current and prospective investors that his companies used investor money as promised and were engaged in legitimate business activity; and misappropriating investor funds for personal expenses and Ponzi payments, including to investors Bunevacz continued to solicit for further investment.

88.     By engaging in the conduct described above, defendants Bunevacz, Caesarbrutus, and CB Holding, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange:

16

(a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

89.     By engaging in the conduct described above, defendants Bunevacz, Caesarbrutus, and CB Holding violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

## SECOND CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities**

**Violations of Sections 17(a) of the Securities Act**

**(against Bunevacz, Caesarbrutus, and CB Holding)**

90.     The SEC realleges and incorporates by reference paragraphs 1 through 84 above.

91.     By engaging in the conduct described above, defendants Bunevacz, Caesarbrutus, and CB Holding obtained money or property by means of false statements to investors in connection with the offer or sale of investments in Caesarbrutus, CB Holding, and Brutus California, and omitted to disclose material information about Bunevacz, Caesarbrutus, CB Holding, and Brutus California.

92.     In addition, defendants Bunevacz, Caesarbrutus, and CB Holding engaged in a scheme to defraud whereby they induced investors to invest in Caesarbrutus, CB Holding, and Brutus California, including by: providing current and prospective investors with fabricated purchase orders and invoices, false and misleading bank statements and, in at least one case, a fabricated settlement agreement; creating entities with the same and similar names as the customers and suppliers Bunevacz claimed to do business with and transferring money to and from those entities to create the false impression with current and prospective investors that

his companies used investor money as promised and were engaged in legitimate business activity; and by misappropriating investor funds for personal expenses and Ponzi payments, including to investors he continued to solicit for further investment.

93.   By engaging in the conduct described above, defendants Bunevacz, Caesarbrutus, and CB Holding, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

94.   Defendants Bunevacz, Caesarbrutus, and CB Holding, with scienter, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  In the alternative, defendants Bunevacz, Caesarbrutus, and CB Holding were negligent.

95.   By engaging in the conduct described above, defendants Bunevacz, Caesarbrutus, and CB Holding violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

### THIRD CLAIM FOR RELIEF

**Unregistered Offer and Sale of Securities**

**Violations of Sections 5(a) and 5(c) of the Securities Act**

**(against all Defendants)**

96.   The SEC realleges and incorporates by reference paragraphs 1 through 84 above.

97.   Caesarbrutus directly offered securities to investors in the form of promissory notes and profit sharing agreements.  CB Holding and Brutus California

directly offered securities to investors in the form of promissory notes, and CB Holding directly offered securities to investors in form of stock certificates.

98.    Caesarbrutus, CB Holding and Brutus California never registered any offering of securities with the U.S. Securities and Exchange Commission.

99.    Defendant Bunevacz directly offered and sold those securities on behalf of those issuers.  He was a necessary participant and substantial factor in the offering and sale of those securities because, among other things, he was the president of CB Holding and the manager of Caesarbrutus, and he controlled these entities and received proceeds from the sales of those securities.

100.    Defendant Mary Hayca engaged in steps necessary to the distribution of the securities in the unregistered offerings, including by signing Stock Certificates on behalf of CB Holding; signing Promissory Notes on behalf of both Caesarbrutus and CB Holding (and Brutus California as a co-issuer); authorizing Bunevacz to sign Promissory Notes and other business documents in her name for both entities; meeting with prospective investors to discuss the putative businesses; and administering bank accounts that received investor funds.  For the same reasons, Mary Hayca was a necessary participant and substantial factor in many of the transactions.

101.    Purchasers of the securities were located in multiple states and outside of the United States, and defendants conducted the offerings through the Internet and through telephonic solicitations.

102.    By virtue of the foregoing, (a) without a registration statement in effect as to that security, defendants Bunevacz, Caesarbrutus, CB Holding, Brutus California and Mary Hayca, directly and indirectly, made use of the means and instruments of transportation or communications in interstate commerce and of the mails to sell securities through the use of means of a prospectus, and (b) made use of the means and instruments of transportation or communication in interstate commerce and of the mails to offer to sell through the use of a prospectus, securities as to which

19

no registration statement had been filed.

103.    By reason of the foregoing, defendants Bunevacz, Caesarbrutus, CB Holding, Brutus California and Mary Hayca, directly or indirectly violated, and unless restrained and enjoined, will continue to violate, Section 5 of the Securities Act [15 U.S.C. § 77e].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that the defendants committed the alleged violations.

### II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining defendants Bunevacz, Caesarbrutus, and CB Holding, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

### III.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining defendants Bunevacz, Caesarbrutus, CB Holding, Brutus California and Mary Hayca, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)].

### IV.

Enter an order against defendants Bunevacz and CB Holding prohibiting them

from participating in any offering of penny stock pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6).

## V.

Enter an order against defendant Bunevacz pursuant to Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 77t(e) and 15 U.S.C. § 78u(d)(2), prohibiting him from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 78 U.S.C. § 78o(d).

## VI.

Order all defendants to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon.

## VII.

Order all defendants to pay civil penalties under Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d).

## VIII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## IX.

Grant such other and further relief as this Court may deem just and necessary.

Dated:  April 5, 2022

*/s/ Kathryn C. Wanner*
Kathryn C. Wanner
M. Lance Jasper
Attorneys for Plaintiff
Securities and Exchange Commission