UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>v.<br><br>DAVID J. BUNEVACZ et al.,<br><br>      Defendants. | Case No. 2:22-cv-02284-SB-JC<br><br>ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |

  Plaintiff Securities and Exchange Commission (SEC) brought this enforcement action against Defendant David J. Bunevacz, his stepdaughter, and affiliated entities arising from Bunevacz's sale of securities to investors.[1] Dkt. No. 1 (Compl.).  The SEC alleges that Bunevacz told investors their investments would generate profits from the sale of cannabis products, but in reality, he used investor funds for personal expenses.  He also allegedly materially misrepresented his professional experience and connections and failed to disclose prior federal securities convictions to investors.  Bunevacz waived service but failed to answer, and the Clerk entered default against him.  Dkt. Nos. 9, 18.  The SEC now moves for default judgment against him.  Dkt. No. 50.  The Court finds this matter suitable for decision without oral argument and vacates the April 7, 2023 motion hearing.  Fed. R. Civ. P. 78; L.R. 7-15.  The motion is granted.

---

[1] Bunevacz is the sole remaining defendant in this case.  The SEC dismissed the three organizational Defendants (Brutus California Ventures Corp., CB Holding Group Corp., and Caesarbrutus LLC), and the Court entered a consent judgment against Defendant Mary Hayca Bunevacz.  Dkt. Nos. 46, 54.

1

I.

The SEC alleges that Bunevacz and two entities he controlled raised more than $32 million from investors through the sale of promissory notes, the sale of stock certificates, and profit sharing agreements. Compl. ¶¶ 5, 15, 20, 30–32, 36–37. None of these offerings was registered with the SEC. Id. ¶¶ 11, 12, 14.

Bunevacz told investors that their investments would generate profits from the cannabis industry. Id. ¶ 5. To substantiate his claim, he provided fake purchase orders for large quantities of vape pens, lied about his professional experience and connections in the cannabis industry (which were non-existent), created fake bank accounts purportedly for suppliers and distributors, and provided false bank statements that purported to show transfers to suppliers and from customers but actually were to and from Bunevacz's other accounts. Id. ¶¶ 5, 7, 49–53, 57–59, 60–62. He also failed to disclose two prior securities violations, and in at least one instance falsely represented to an investor that he had no criminal history. Id. ¶¶ 7, 70–71. He also failed to disclose civil lawsuits filed against him, and when one investor asked him to explain a civil lawsuit he had discovered, Bunevacz falsely claimed that the suit was resolved in his favor and provided a doctored settlement agreement. Id. ¶¶ 73, 75.

Bunevacz misappropriated millions of dollars received from investors, including over $8 million spent at casinos, $10 million in credit card expenses, $300,000 on a horse, $200,000 on a birthday party, and $200,000 in rent on a mansion. Id. ¶¶ 64–66. He also used investor funds to pay criminal restitution arising from an unrelated securities conviction. Id. ¶ 67. Some funds were also used to make payments to earlier investors. Id. ¶ 76.

The SEC brought the following claims against Bunevacz: (1) violation of § 10(b) of the Exchange Act and Rule 10b-5, (2) violation of § 17(a) of the Securities Act, and (3) violation of §§ 5(a) and (c) of the Securities Act. Bunevacz waived service. Dkt. No. 9. After he failed to respond to the complaint, the clerk entered default against him. Dkt. No. 18. This unopposed motion followed.

II.

A.

Before a court may rule on a motion for default judgment, it must first determine whether the motion complies with Federal Rule of Civil Procedure 55 and Local Rule 55-1. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). The application must set forth: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Civil Relief Act (50 U.S.C. § 3931) does not apply; and (5) that notice of the application has been served on the defaulting party (if required). *Id*.

These procedural requirements are satisfied. The clerk has entered default against Bunevacz for his failure to respond to the complaint. Dkt. No. 18. Further, service of this application is not required under Federal Rule of Civil Procedure 55(b)(2); the SEC's moving papers contain the information required by both the Local Rules and the Federal Rules of Civil Procedure; no law or rule prohibits entry of default judgment against Bunevacz; Bunevacz is not an infant or incompetent; and Bunevacz is not exempted under the Servicemembers Civil Relief Act. Dkt. No. 50-2 ¶¶ 3–4.

B.

Once these procedural requirements are met, "[g]ranting or denying a motion for default judgment is a matter within the court's discretion." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 (C.D. Cal. 2010). The Ninth Circuit has identified seven factors courts may consider when exercising this discretion: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

The *Eitel* factors support entry of a default judgment here. First, the SEC would be prejudiced absent a default judgment because there would be no "other recourse for recovery." *PepsiCo*, 238 F. Supp. 2d at 1177.

As to the second and third factors, the complaint sufficiently states claims under § 10(b) of the Exchange Act and Rule 10b-5, § 17(a) of the Securities Act, and §§ 5(a) and (c) of the Securities Act.  The stock certificates and profit-sharing agreements Bunevacz used to raise funds are securities since they involve "an investment of money in a common enterprise with profits to come solely from the efforts of others."  *S.E.C. v. Edwards*, 540 U.S. 389, 393 (2004) (internal citation omitted); *see also* 15 U.S.C. § 77b(a)(1) (defining "security" to include "any . . . stock"); *id*. § 78c(a)(10) (same).  The promissory notes Bunevacz used likewise fall within the purview of the federal securities laws.  *See Reves v. Ernst & Young*, 494 U.S. 56, 65 (1990) (establishing a presumption that every note is a security).

Rule 10b-5 and § 17(a) of the Securities Act both establish liability for (1) employing a scheme to defraud in connection with the sale of securities, (2) engaging in "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person" in connection with the sale of securities, and (3) making untrue statements of material fact in connection with the sale of securities.  17 C.F.R. § 240.10b-5; 15 U.S.C. § 77q(a).  Scienter is required under Rule 10b-5 and § 17(a)(1), and "a showing of intentional or knowing conduct" is sufficient under both provisions.  *S.E.C. v. Feng*, 935 F.3d 720, 734 (9th Cir. 2019).  As detailed above, the SEC alleges that Bunevacz devised and executed a scheme to defraud investors, made materially false and misleading statements to investors to obtain their participation in fake investments, took numerous actions to conceal his deceptions, and misappropriated much of the money he raised.  These allegations support a strong inference that Bunevacz acted with scienter.  Accordingly, the complaint states claims under Rule 10b-5 and § 17(a) of the Securities Act.

Sections 5(a) and (c) of the Securities Act prohibit directly or indirectly selling or offering to buy or sell unregistered securities through interstate commerce or the mails.  15 U.S.C. § 77e.  A claim under these provisions requires that:  (1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell the securities, and (3) the sale or offer was made through interstate commerce.  *S.E.C. v. Phan*, 500 F.3d 895, 901–02 (9th Cir. 2007) (internal citation omitted).  The SEC satisfies each of these elements in its complaint against Bunevacz.  Thus, the SEC has stated claims under §§ 5(a) and (c) of the Securities Act.

The fourth *Eitel* factor considers the amount of money at stake if default judgment is granted.  Here, this amount is $0 because the judgment will be deemed

satisfied by the criminal restitution order in a parallel criminal action against Bunevacz. Fifth, there is unlikely to be a dispute over the material facts because Bunevacz has failed to appear. Sixth, there is no evidence of excusable neglect. Seventh, despite the policy preferring decisions on the merits, when a party appears to oppose the action, there is likely no dispute on the merits, and thus default judgment is appropriate. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

Thus, the *Eitel* factors favor entry of a default judgment.

### III.

The SEC requests that judgment be entered permanently enjoining Bunevacz from violating §§ 17(a), 5(a), and 5(c) of the Securities Act and § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, ordering Bunevacz to disgorge his profits from the scheme, banning Bunevacz from serving as an officer or director of a securities issuer, and prohibiting Bunevacz from offering a penny stock (i.e. a stock sold for less than $5 per share). This relief is prayed for in the complaint and is authorized by the securities laws. Compl. at 21–22 of 22; 15 U.S.C. § 77t (authorizing permanent injunctions, officer-and-director bans, and penny stock bans in enforcement actions); *id*. § 78u(d) (authorizing permanent injunctions, disgorgement, officer-and-director bans, and penny stock bans in enforcement actions). Therefore, the Court will enter the SEC's requested judgment against Bunevacz. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

### IV.

For the foregoing reasons, the SEC's motion for default judgment against Bunevacz is GRANTED. A final judgment will be entered separately.

IT IS SO ORDERED.

Date: April 3, 2023

Stanley Blumenfeld, Jr.
United States District Judge